UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

GIANG TROUNG NGO,

                Petitioner,

v.

TODD BLANCHE et al.,

                Respondents.

_____/

Case No. 1:26-cv-1853

Honorable Jane M. Beckering

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee, initiated this action by filing a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] (Pet., ECF No. 1.) For the following reasons, the Court will deny the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

### **Discussion**

### I.     **Procedural History**

The habeas petition challenges the lawfulness of Petitioner's current detention and asks the Court to, *inter alia*, issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.7.) In an Order entered on June 17, 2026, the Court directed Respondents to show cause, within three business days, why the writ of

---

[1] Petitioner is granted leave to proceed *in forma pauperis*.

habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.)

Respondents filed their response on June 24, 2026, (ECF No. 7).[2]

## II.    Factual Background

Petitioner is a native and citizen of Vietnam who entered the United States in 1975 as a

refugee. (Suriano Decl. ¶ 4, ECF No. 7-2, PageID.73.) On May 19, 2009, ICE agents encountered

and arrested Petitioner. (*Id*. ¶ 11). The Department of Homeland Security (DHS) issued Petitioner

a Notice to Appear (NTA) charging him as removable under §§ 237(a)(2)(A)(iii) and

237(a)(2)(B)(i) of the Immigration and Nationality Act (INA) after Petitioner was convicted of

Criminal Sexual Conduct, 1ˢᵗ degree and a controlled substance violation. (*Id*.)

On July 30, 2009, an Immigration Judge (IJ) with the Detroit Immigration Court ordered

Petitioner removed to Vietnam. (*Id*. ¶ 12, PageID.74.) Because Petitioner waived his appeal of that

order, the removal order became administratively final that day.[3] On November 5, 2009, DHS

released Petitioner on an Order of Supervision. (*Id*. ¶ 13.)

On January 12, 2026, ICE agents arrested Petitioner "when he reported for a scheduled

office visit." (*Id*. ¶ 14.) That same day, DHS served Petitioner with a Notice of Revocation of

Release, advising that his release was revoked pursuant to 8 C.F.R. § 241.13 because a change in

circumstances revealed "that there is a significant likelihood of removal in the reasonably

foreseeable future in your case." (Notice of Revocation of Release, ECF No. 7-3, PageID.77.) DHS

served Petitioner with a Notice to Alien of File Custody Review on February 24, 2026, advising

---

[2] Respondents filed their initial response on June 23, 2026, (ECF No. 5), and a corrected response on June 24, 2026, (ECF No. 7).

[3] For the purposes of 8 U.S.C. § 1231(a), a removal order "shall become final upon the earlier of (i) a determination by the Board of Immigration Appeals (BIA) affirming such an order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." 8 U.S.C. § 1101(a)(47)(B).

Petitioner that DHS would review Petitioner's custody status on or about April 12, 2026. (Notice to Alien of File Custody Review, ECF No. 7-4, PageID.80–81.) Petitioner initially refused to be interviewed or sign the Notice to Alien of File Custody Review. (*Id.*, PageID.81.) Petitioner also declined to participate in an informal interview unless he had an attorney with him. (Notice to Alien of Interview, ECF No. 7-4, PageID.82.) Petitioner was issued a continued detention letter on March 28, 2026, after DHS determined Petitioner posed "a significant flight risk" and "a danger to the community, to the safety of other persons, or to property." (Decision to Continue Detention, ECF No. 1-1, PageID.14.) On May 14, 2026, Petitioner was scheduled for and participated in an informal interview. (Second Notice to Alien of Interview, ECF No. 7-6. PageID.88–89.)

Petitioner is currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan. (Pet., ECF No. 1, PageID.1.) ICE is presently working with the government of Vietnam to obtain travel documents for Petitioner. (Suriano Decl. ¶¶ 15, 21, ECF No. 7-2, PageID.74.)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers upon the federal courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## IV.    Merits Discussion

### A.    Revocation of Release

Petitioner first contends that Respondents unlawfully detained Petitioner without a formal hearing concerning the revocation of Petitioner's Order of Supervision. (Pet., ECF No. 1, PageID.6.) Respondents, however, contend that Petitioner is properly detained under 8 U.S.C. § 1231(a), following Petitioner's final order of removal entered on July 30, 2009.

Ordinarily, when an individual is issued a final order of removal, that person must be removed from the country within 90 days. 8 U.S.C. § 1231(a)(1)(A). Except for situations where the person is "detained or confined" in a case other than the "immigration process," or where a court orders a stay of removal, the 90-day removal period begins when the removal order becomes administratively final. *Id.* § 1231(a)(1)(B). Here, it is undisputed that Petitioner's order of removal is administratively final. (*See id.*, PageID.7.)

Under § 1231(a)(6), the government is permitted to continue to detain individuals who are deemed "inadmissible" beyond the removal period, or it may release them under specified terms of supervision. 8 U.S.C. § 1231(a)(6). However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute," and the noncitizen must be released. *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001); *see* 28 U.S.C. § 1231(a)(3) ("If the alien does not leave or is not removed within the [90-day] removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General.").

Consistent with § 1231(a)(6), Petitioner was released from detention with an Order of Supervision, dated November 5, 2009. The government has promulgated regulations in the Code of Federal Regulations concerning the release of noncitizens who are subject to a final removal order. *See* 8 C.F.R. § 241.4; 8 C.F.R. § 241.13. These regulations—specifically, §§ 241.4 and

4

241.13—also govern the revocation of such noncitizens' release. The agency must comply with the applicable regulatory and statutory requirements. *See, e.g.*, *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954), *superseded in part by statute on other grounds as recognized in Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 135 (2020) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.). As the Sixth Circuit Court of Appeals has explained:

> "The Supreme Court has long recognized that a federal agency is obliged to abide by the regulations it promulgates. *See Vitarelli v. Seaton*, 359 U.S. 535, 545 (1959); *Service v. Dulles*, 354 U.S. 363, 372 (1957); *Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954). An agency's failure to follow its own regulations 'tends to cause unjust discrimination and deny adequate notice' and consequently may result in a violation of an individual's constitutional right to due process. Where a prescribed procedure is intended to protect the interests of a party before the agency, 'even though generous beyond the requirements that bind such agency, that procedure must be scrupulously observed.' *Vitarelli*, 359 U.S. at 547 (Frankfurter, J., concurring); *see also* Note, *Violations by Agencies of Their Own Regulations*, 87 Harv. L.Rev. 629, 630 (1974) (observing that agency violations of regulations promulgated to provide parties with procedural safeguards generally have been invalidated by courts)."

*Wilson v. Comm'r Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting *Sameena, Inc. v. United States Air Force*, 147 F.3d 1148, 1153 (9th Cir.1998)).

8 C.F.R. § 241.4 generally governs the continued detention of noncitizens under a final order of removal. Section 241.4(l)(2) provides:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;
>
> (ii) The alien violates any condition of release;
>
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

8 C.F.R. § 241.4. Here, Petitioner was notified that his release was revoked because circumstances had changed such that there was a significant likelihood of removal in the reasonably foreseeable future. (Notice of Revocation of Release, ECF No. 7-3, PageID.77.)

Contrary to Petitioner's assertions, the regulations governing release do not require a formal hearing. Instead, they provide that, upon revocation of release, the noncitizen "will be notified of the reasons for revocation of his or her release," and will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.4(l)(1); 8 C.F.R. § 241.13(i). Petitioner initially refused to participate in an informal interview but later participated in an interview on May 14, 2026. (Notice to Alien of Interview, ECF No. 7-4, PageID.80–81; Second Notice to Alien of Interview, ECF No. 7-6, PageID.88.) Petitioner does not claim that Respondents failed to comply with these regulations. Accordingly, the revocation of Petitioner's Order of Supervision provides no grounds for relief.

## B.    Detention Following Final Order of Removal

Given that Petitioner has a final order of removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of removal became final on July 30, 2009. The 90-day removal period following the order

6

expired before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas v. Davis*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[4] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

Here, at the time that Petitioner filed the petition on June 12, 2026, Petitioner had been detained less than six months. "Although the Supreme Court established a six-month period of presumptively reasonable detention," courts have found that *Zadvydas* does "not preclude a detainee from challenging the reasonableness of his detention before such time." *See, e.g.*, *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 395–96 (D.N.J. 2025) (citing, *inter alia*, *Zadvydas*, 533 U.S. at 699–701; *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018)); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 707 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, however, and *Zadvydas* did not automatically authorize all detention until it reaches constitutional

---

[4] The Court notes that the Supreme Court has held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

limits." (citations omitted)). That is, during the six-month period of detention, "[t]he presumption of reasonableness is the default," and "the government bears no burden to justify detention," "but if a person 'can prove' that his removal is not reasonably foreseeable, then he can overcome that presumption." *Id.* at 397 (citations omitted).

Petitioner contends that his detention is not reasonably foreseeable because his "removal order was administratively final on July 30, 2009, which was almost 17 years [ago,] . . . which would mean that they would not be able to do so in the future." (Pet., ECF No. 1, PageID.6.) At this time, Petitioner's assertions are insufficient to meet Petitioner's burden to *prove* that "there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Accordingly, the Court will deny Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

## Conclusion

For the reasons discussed above, the Court will enter a Judgment denying Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 without prejudice.

Dated:      July 23, 2026                              /s/ Jane M. Beckering
                                                       Jane M. Beckering
                                                       United States District Judge

8